IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN COLLINS,<br><br>     Plaintiff,<br><br>  v.<br><br>VIRTELA TECHNOLOGY SERVICES,<br>INC.; and DOES 1 through 10,<br><br>     Defendants.<br><br>━━━━━━━━━━━━━━━━━━━━━━━━━━/ | No. C 12-613 CW<br><br>ORDER DENYING<br>PLAINTIFF'S MOTION<br>TO REMAND,<br>GRANTING IN PART,<br>AND DENYING IN<br>PART, DEFENDANT'S<br>MOTION TO COMPEL<br>ARBITRATION AND<br>SETTING A CASE<br>MANAGEMENT<br>CONFERENCE (Docket<br>Nos. 12, 13 and<br>42) |

Plaintiff John Collins moves to remand this action to state court.  Defendant Virtela Technology Services, Incorporated opposes Plaintiff's motion and moves to compel arbitration or dismiss the case for improper venue.  Plaintiff opposes Defendant's motion.  Having considered the papers filed by the parties and their arguments at the hearing, the Court GRANTS in part Plaintiff's motion to remand and DENIES it in part.  The Court also GRANTS in part Defendant's motion to compel arbitration or dismiss and DENIES it in part.

BACKGROUND

Plaintiff, a resident of California, worked as a systems engineer for Defendant from July 14, 2008 through July 1, 2011. First Amended Complaint (1AC) ¶¶ 2, 7.  During his employment, Plaintiff worked from his home office in California.  Decl. of John Collins in Supp. of Opp. to Mot. to Compel Arb. (Collins Arb. Decl.) ¶ 7.  He travelled to Defendant's headquarters in Greenwood Village, Colorado no more than fifteen times.  Id.

When Plaintiff was hired and at various times during his employment, he signed certain documents, which he was told that he had to sign as a condition of employment.  Collins Arb. Decl. ¶ 3. The documents included an offer letter and agreement titled "Employment, Confidential Information and Invention Assignment Agreement," both of which Plaintiff signed on June 30, 2008.  Id. The documents bear Plaintiff's mailing address and appear to have been mailed to Plaintiff at his home in California.  Decl. of Gary Schlisner in Supp. of Mot. to Compel Arb. (Schlisner Arb. Decl.) ¶ 5, Ex. A.  Defendant's Vice President of Finance and Controller, Gary Schlisner, states that its employees who entered into the contracts with Plaintiff did so by phone, mail and email from its headquarters in Colorado.  Decl. of Gary Schlisner in Supp. of Defs.' Reply to Mot. to Compel Arb. (Schlisner Arb. Reply Decl.) ¶¶ 2-3.

The offer letter included the following clauses, among others:

> 2. <u>At-Will Employment</u>. You acknowledge that your employment with Virtela is for an unspecified duration that constitutes at-will employment, and that either you or Virtela can terminate this relationship at any time, with or without cause and with or without notice.  The terms of this offer letter, therefore, do not create either an express and/or implied contract of employment with Virtela.  No manager or representative of Virtela, other than the President of Virtela, has authority to enter into any agreement for employment for any specified period of time or to make any agreement or contract to the foregoing, and any promises to the contrary may only be relied upon by you if they are in writing and signed by the President of Virtela.
>
> . . .
>
> 7. <u>Confidential Information</u>.  You agree that your employment is contingent upon execution of, and delivery to, Virtela of an Employment, Confidential Information

and Invention Assignment Agreement in the standard form utilized by Virtela for its employees.

. . .

10.  <u>General Provisions</u>.

(a) This offer letter will be governed by the laws of the State of Colorado, applicable to agreements made and to be performed entirely within such state.

(b) This offer letter sets forth the entire agreement and understanding between Virtela and you relating to your employment and supersedes all prior verbal discussion between us.  Any subsequent change or changes in your duties, salary or other compensation will not affect the validity or scope of this offer letter.  Any changes to the at-will term and nature of your employment must be executed in writing and signed by you and the President of Virtela.

. . .

Please acknowledge and confirm your acceptance of this letter by signing and returning the enclosed copy of this offer letter, and the Employment, Confidential Information and Invention Assignment Agreement. . . .

Schlisner Arb. Decl. ¶ 5, Ex. A.

The Employment, Confidential Information and Invention Assignment Agreement stated, among other things:

1.  <u>At-Will Employment</u>.  I understand and acknowledge that my employment with the Company is for an unspecified duration and constitutes "at-will" employment.  I acknowledge that this employment relationship may be terminated at any time, with or without good cause or for any or no cause, at the option of either the Company or myself, with or without notice.

2.  <u>Confidential Information</u>. . . .

3.  <u>Inventions</u>. . . .

5.  <u>Returning Company Documents</u>. . . .

10.  <u>Arbitration and Equitable Relief</u>.

(a) <u>Arbitration</u>.  Except as provided in Section 10(b) below, I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach

3

of this Agreement, shall be settled by arbitration to be held in the State of Colorado, in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.

(b) <u>Equitable Remedies</u>. I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Sections 2, 3, and 5 herein. Accordingly, I agree that if I breach any of such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief and I hereby consent to the issuance of such injunction and to the ordering of specific performance.

11. <u>General Provisions</u>.

(a) <u>Governing Law; Consent to Personal Jurisdiction</u>. The laws of the State of Colorado will govern this Agreement. I hereby expressly consent to the personal jurisdiction of the state and federal courts located in Colorado for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

(b) <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us. . . .

(c) <u>Severability</u>. If one or more provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

<u>Id.</u> at ¶ 6, Ex. B. In other documents, Defendant refers to this agreement as the "Confidential Information Agreement" or the "Confidentiality Agreement." <u>Id.</u> at ¶ 7, Ex. C, 29, 31.

The parties subsequently signed two agreements on July 14, 2008 and February 19, 2009, related to the Sales Engineer Bonus Plan.  Id. at ¶ 7, Ex. C; Schlisner Arb. Reply Decl. ¶ 7, Ex. A. Both contained, in addition to various provisions related to the Bonus Plan, an at-will employment clause and a choice of law clause selecting Colorado as the governing law.  Id.  The 2007 Bonus Plan, signed on July 14, 2008, contained a forum selection clause, providing that by signing the agreement, "you agree that you can only sue the Company under or relating to this Plan in the state or federal courts in Denver County, Colorado (jurisdiction and venue)."  Id. at ¶ 7, Ex. C, 29.  The 2009 Bonus Plan did not contain any such clause.  In addition, the 2009 Bonus Plan included an arbitration clause, providing, "Any disputes brought by you under this Plan shall be subject to binding arbitration in accordance with the terms of your Confidential Information Agreement."  Id. at ¶ 7, Ex. A, 5.

Plaintiff, who is sixty-two years old, alleges that he performed his work well for Defendant and received positive performance reviews.  Id. at ¶¶ 9-10, 12, 17.  He further contends that he was terminated in favor of a younger, Indian replacement and was given no explanation other than that "the company was going in a new direction."  Id. at ¶ 16.  Plaintiff also alleges that the termination breached the terms and conditions of his employment agreement, which included that he "would be able to continue his employment with defendant indefinitely as long as he carried out his duties in a proper and competent manner" and that he "would not be demoted, discharged, or otherwise disciplined,

United States District Court
For the Northern District of California

nor would Plaintiff's job functions be reassigned for other than good cause with notice thereof." Id. at ¶ 39.

Plaintiff filed this action on January 12, 2012 in the Alameda County Superior Court, and served Defendant the following day. Plaintiff filed the 1AC on January 30, 2012. In the 1AC, Plaintiff asserts seven claims against Defendant arising under California statutory and common law: (1) age discrimination in violation of the Fair Employment and Housing Act (FEHA), Cal. Gov. Code §§ 12900, et seq.; (2) national origin discrimination in violation of FEHA; (3) breach of employment contract; (4) breach of the covenant of good faith and fair dealing; (5) wrongful termination in violation of public policy; (6) refusal to permit inspection and copying of personnel and payroll documents; and (7) unfair business practices. 1AC ¶¶ 20-66.

Defendant removed this action on February 7, 2012 under 28 U.S.C. §§ 1332 and 1441. Notice of Removal (NOR) ¶ 1. Defendant states that there is total diversity between the parties and that the amount in controversy exceeds $75,000. Id. at ¶¶ 1, 7. Defendant also alleges that its principal place of business at the time of filing and removal was in Colorado. Id. at ¶ 1. On the civil cover sheet, in the section for divisional assignment, Defendant placed an X in the box next to San Jose. Docket No. 1-5.

Plaintiff filed his motion to remand on February 24, 2012. Defendant filed its motion to compel arbitration on the same day.

On February 29, 2012, a clerk's notice was filed, stating that "due to a clerical error regarding venue, this action was assigned to the San Jose Division, and it should have been

assigned to either the San Francisco or Oakland Divisions."

Docket No. 17.  The case was then re-assigned to the undersigned.

Docket No. 18.

DISCUSSION

I.   Motion to Remand

     A. Legal Standard

     A defendant may remove a civil action filed in state court to federal district court so long as the district court could have exercised original jurisdiction over the matter.  28 U.S.C. § 1441(a).  Title 28 U.S.C. § 1447(c) provides that if, at any time before judgment, it appears that the district court lacks subject matter jurisdiction over a case previously removed from state court, the case must be remanded.  On a motion to remand, the scope of the removal statute must be strictly construed.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id.  Courts should resolve doubts as to removability in favor of remanding the case to state court.  Id.

     B. Discussion

     Plaintiff contends that the removal was procedurally defective, Defendant did not sufficiently allege that Plaintiff is a California citizen, and Defendant's principal place of business is California, not Colorado.

          1. Procedural defect in removal

     Plaintiff argues that Defendant's removal was procedurally defective because of its selection of the San Jose division. Plaintiff further contends that the Court's subsequent

United States District Court
For the Northern District of California

7

re-assignment of the action to the proper division did not remedy Defendant's error.

Title 28 U.S.C. section 1446 requires that, when removing a civil action from state court to federal court, a defendant is required to file a notice of removal "in the district court of the United States for the district and division within which such action is pending." 28 U.S.C. § 1446(a). "Under 28 U.S.C. § 1406(a), when there is 'a case laying venue in the wrong division or district[,]' the district court 'shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" LNV Corp. v. STK Fin., LLC, 2011 WL 4345193, at *2 (N.D. Cal.) (brackets in original). Other judges in the Northern District of California have concluded that, under this statutory scheme, when a case is removed to the incorrect district or division, the court "may transfer the instant action to the correct venue where the notice of removal should have been filed." Id. See Capretto v. Stryker Corp., 2007 WL 2462138, at *1 n.1 (N.D. Cal.) (noting that a case removed to the wrong district should be transferred and not remanded, if federal jurisdiction is otherwise proper). See also Shamrock Mfg. Co. v. Ammex Corp., 2010 WL 3153976, at *1-8 (E.D. Cal.) (noting that there is no controlling Supreme Court or Ninth Circuit authority regarding whether a case removed to the wrong district should be remanded or transferred, collecting cases, and finding that "the better view supports the transfer").

Thus, although Defendant should have requested assignment of the case to the San Francisco/Oakland Division upon removal, the Court properly could remedy the deficiency by transferring the

action to the proper division.  Here, the case has already been transferred and is currently pending in the division that Plaintiff agrees is correct.  The Court DENIES Plaintiff's motion to remand based on the defect in the civil cover sheet.

2. Failure to plead Plaintiff's citizenship

Plaintiff also argues that, because Defendant has plead only that he is a resident of California, it has not plead citizenship sufficiently to meet the requirements for diversity jurisdiction under 28 U.S.C. § 1332, and the case should be remanded to state court.

In a case in which the complaint and notice of removal also similarly stated that the plaintiffs were "'residents' of California," the Ninth Circuit noted "the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency."  Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "The natural person's state citizenship is . . . determined by her state of domicile, . . . her permanent home, where she resides with the intention to remain or to which she intends to return."  Id.  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."  Id.  "Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties."  Id. (citing Whitmire v. Victus Ltd. T/A Master Design Furniture, 212 F.3d 885, 887 (5th Cir. 2000) ("In a diversity action, the plaintiff must state all parties' citizenships such that the existence of complete diversity can be confirmed.")).  Here, as in Kanter, "[s]ince the party asserting diversity

jurisdiction bears the burden of proof," Defendant's "failure to specify [Plaintiff's] state citizenship was fatal to [its] assertion of diversity jurisdiction."  Id. at 857-58.

However, contrary to Plaintiff's assertions, the Court may decline to remand the action at this time and instead grant Defendant leave to amend its notice of removal to cure this jurisdictional deficiency.  In Kanter, the Ninth Circuit found that the defendant "could potentially have cured its defective allegations regarding citizenship by amending its notice of removal," especially because, as here, the plaintiffs had never disputed their citizenship.  Id. at 858 (citing 28 U.S.C. § 1653; Jacobs v. Patent Enforcement Fund, Inc., 230 F.3d 565, 568 n.3 (2d Cir. 2000); 15 James Wm. Moore et al., Moore's Federal Practice § 102.17[1], at 102-31 (3d ed. 2001)).

Accordingly, the Court GRANTS Defendant leave to amend its notice of removal within seven days of the date of this Order to allege specifically that Plaintiff is a citizen of California. Plaintiff may renew his motion to remand on this ground only within two weeks thereafter, if Plaintiff can argue in good faith that Defendant has failed to file an amended notice of removal or has failed to allege his citizenship properly in its amended notice of removal.

3. Defendant's citizenship

The parties dispute the state citizenship of Defendant for diversity purposes.  The diversity statute states that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The

United States District Court
For the Northern District of California

parties agree that Defendant's state of incorporation is Delaware. 1AC ¶ 2; NOR ¶ 1.  At issue is whether Defendant's "principal place of business" is Colorado or California.

The Supreme Court recently discussed this issue in great detail in Hertz Corp. v. Friend, 130 S.Ct. 1181 (2010).  Under that opinion, a corporation has one principal place of business--its "nerve center."  Id. at 1192-93.  This refers to the place where "the officers direct, control, and coordinate the corporation's activities," which frequently, but not always, is "the place where the corporation maintains its headquarters."  Id. at 1192.  The Court noted that, under this test, "there will be some hard cases," especially "in this era of telecommuting," in which "some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet."  Id. at 1194.

Contrary to Defendant's argument that "Plaintiff has utterly failed to establish that Virtela's nerve center was California, and not Colorado," Opp. to Mot. to Remand at 6, as the party seeking the jurisdiction of this Court, Defendant has the burden of establishing that its principal place of business is outside California.  Hertz, 130 S.Ct. at 1194.  "When jurisdiction is challenged, the party asserting federal jurisdiction must present 'competent proof' to substantiate its jurisdictional allegations."  Ganesan v. GMAC Mortg., LLC, 2011 WL 1496099, at *2 (N.D. Cal.).

In support of its assertion that its principal place of business is in Colorado, Defendant offers the declaration of Gary Schlisner.  In his declaration, Schlisner attests that Defendant has identified its own principal place of business as Greenwood

11

**United States District Court**
For the Northern District of California

Village, Colorado, in numerous places, including on its website, federal tax filings, corporate records, filings with the California and Colorado Secretaries of State, and press releases. Schlisner Decl. in Opp. to Mot. to Remand (Schlisner Remand Decl.) ¶¶ 4-8.  According to Schlisner, Defendant currently employs three individuals working in California and 142 individuals working in Colorado, as well as eleven people in other states and about 200 people outside of the United States.  Id. at ¶ 9.  Schlisner further states that "Greenwood Village, Colorado, Virtela's headquarters, is the place of actual direction, control, and coordination," because it is where "nearly all of Virtela's high-level officers are based" and where "they make significant corporate decisions . . ., set corporate policy, engage in strategic decision-making and are responsible for oversight of their areas of responsibility and supervision of employees."  Id. at ¶ 10.  Schlisner states that ten of twelve of the company's current vice presidents are based in Greenwood, although he acknowledges that one of the other two vice presidents is based in California.  Id. at ¶ 11.  He represents that the other vice presidents that Plaintiff contends are based in California no longer work with the company.  Id. at ¶ 22.

Plaintiff argues that Defendant's nerve center is in California.  Plaintiff states in his declaration that, according to Defendant's website, the majority of members of their five-person board of directors are based in California.  Collins Decl. in Supp. of Mot. to Remand (Collins Remand Decl.) ¶ 9. Plaintiff also attests that Defendant's president and Chief Executive Officer, B.V. Jagadeesh, was based in California and

United States District Court
For the Northern District of California

worked from California more than seventy-five percent of the time. Id. at ¶ 3.  Plaintiff states that during his trips to Colorado, he seldom saw Jagadeesh, and that others based in Colorado told him that they rarely saw Jagadeesh there.  Id. at ¶ 4.  Similarly, Plaintiff states that Jagadeesh's predecessor, Vab Goel, worked from his office in California eighty percent of the time.  Id. at ¶ 6.  Plaintiff bases these estimates on his personal involvement with them, statements that they made while he was on the phone with them, and statements of Defendant's other employees, including its current vice-president of sales.  Id. at ¶ 3, 6.[1]

Defendant replies that, as of March 14, 2012--two days before Defendant filed its opposition to Plaintiff's motion to remand--Jagadeesh's employment with Defendant ended and thus, "whatever may have been the case in the past," Defendant currently "has no CEO that is directing, controlling, and coordinating Virtela's operations in California."  Opp. to Mot. to Remand 6.  The Court rejects this argument.  Under the time-of-filing rule, which the

---

[1] Defendant challenges the admissibility of the statements made by Plaintiff in his declaration.  Defendant contends that he provides no foundation for his statements that Jagadeesh and Goel primarily worked out of California and that his statements are based on inadmissible hearsay.  The Court agrees that Plaintiff's statements regarding what his former co-workers told him about executives' work schedules are inadmissible hearsay and SUSTAINS its objection regarding these statements.

In contrast, Plaintiff has established a proper foundation for his statements that Jagadeesh and Goel worked out of California, namely what he heard them say on the phone regarding where they were and when he saw them in the offices in California and Colorado.  Thus, the Court OVERRULES Defendant's objections to these statements.  However, the Court notes that Defendant's criticisms of Plaintiff's statements, that Plaintiff was not frequently at either the California or Colorado office, are well-taken and do reduce the weight of this evidence.

United States District Court
For the Northern District of California

Supreme Court has recognized as "hornbook law . . . taught to first-year law students in any basic course on federal civil procedure," "all challenges to subject-matter jurisdiction premised upon diversity of citizenship" are measured "against the state of facts that existed at the time of filing--whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004). See also Strotek Corp. v. Air Transp. Ass'n. of Am., 300 F.3d 1129, 1131 (9th Cir. 2002) (recognizing "the core principle of federal removal jurisdiction on the basis of diversity--namely, that it is determined (and must exist) as of the time the complaint is filed and removal is effected"). "Once jurisdiction attaches, a party cannot thereafter, by its own change of citizenship, destroy diversity." Id. at 1132 (citing Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 391 (1998); Southern Pac. Co. v. Haight, 126 F.2d 900, 903 (9th Cir. 1942)).  Thus, the fact that Defendant had a change in its highest officer shortly before opposing this motion is irrelevant to the question of whether diversity jurisdiction existed when the action was filed and removed.

Nonetheless, the Court finds that Defendant has established sufficiently that Defendant's nerve center is in Colorado. Defendant's own representations on official filings of the location of its principal place of business are insufficient by themselves to establish this fact, without additional facts corroborating that location is where its officers direct, control, and coordinate its business.  See Hertz, 130 S.Ct. at 1295 ("the mere filing of a form . . . listing a corporation's 'principal

United States District Court
For the Northern District of California

executive offices' would, without more," be insufficient proof to establish a corporation's "nerve center").  Here, Defendant has provided such facts.  It was in Colorado that almost all of the high level officers, including the Chief Technology Officer, the Senior Vice President of Engineering and Operations, and the Human Resources Director, directed, controlled and coordinated the corporate activities.  Although Jagadeesh resided in California and conducted some business there, he also "spent a substantial amount of time in Colorado directing, controlling, and coordinating Virtela's operations and generally conducting company business."  Schlisner Remand Decl. ¶ 25.  Further, although Jagadeesh "may have [had] the ultimate authority, . . . this is not the test articulated by the Supreme Court in Hertz."  Centrue Bank v. Golf Disc. of St. Louis, Inc., 2010 WL 4178942, at *3 (E.D. Mo.) (finding, under the facts of that case, that the nerve center of a business was not the satellite office from which the CEO worked).  Instead, Supreme Court directed that, in cases where a company's directing functions are divided among officers who are located in different places, the test for the corporate nerve center "points courts in a single direction, toward the center of overall direction, control, and coordination."  Hertz, 130 S.Ct. at 1194.  Here, the overall, day-to-day direction, control, and coordination came from the Colorado office.

Thus, the Court finds that Defendant's principal place of business is in Greenwood Village, Colorado and that there is complete diversity between the parties here, assuming that Defendant is able to allege truthfully that Plaintiff is a citizen

15

of California and not Colorado.  Accordingly, the Court DENIES
Plaintiff's motion to remand on this basis.

II.  Motion to Compel Arbitration

    A. Legal Standard

    Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et
seq., written agreements that controversies between the parties
shall be settled by arbitration are valid, irrevocable and
enforceable.  9 U.S.C. § 2.  A party aggrieved by the refusal of
another to arbitrate under a written arbitration agreement may
petition the district court which would, save for the arbitration
agreement, have jurisdiction over that action, for an order
directing that arbitration proceed as provided for in the
agreement.  Id. § 4.  See Bridge Fund Capital Corp. v. Fastbucks
Franchise Corp., 622 F.3d 996, 1005 (9th Cir. 2010) (noting that
the party seeking to compel arbitration bears the burden of
proving the existence of a valid arbitration agreement by a
preponderance of the evidence).  When presented with a motion to
compel arbitration, if the court is satisfied "that the making of
the arbitration agreement or the failure to comply with the
agreement is not in issue, the court shall make an order directing
the parties to proceed to arbitration in accordance with the terms
of the agreement."  Id. § 4.  The FAA applies in both federal
diversity cases and state court cases, where it pre-empts state
statutes invalidating such agreements.  Allied-Bruce Terminix
Companies, Inc. v. Dobson, 513 U.S. 265, 271-72 (1995).

    The FAA reflects a "liberal federal policy favoring
arbitration agreements."  AT&T Mobility LLC v. Concepcion, 131 S.
Ct. 1740, 1745 (2010) (citations and internal quotation marks

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

omitted).  A district court must compel arbitration under the FAA if it determines that: (1) there is a valid agreement to arbitrate; and (2) the dispute falls within its terms.  Stern v. Cingular Wireless Corp., 453 F. Supp. 2d 1138, 1143 (C.D. Cal. 2006) (citing Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)).  "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986) (citations omitted).

B. Discussion

The parties dispute both the validity of the arbitration agreement and whether the dispute falls within its terms.  The parties also dispute whether California or Colorado law controls this determination.

1. Choice of Law

The parties both acknowledge that the Employment, Confidential Information and Invention Assignment Agreement has a clause selecting Colorado law to govern its interpretation. Plaintiff contends that California law should govern notwithstanding this clause.

"It is well-settled that in diversity cases federal courts must apply the choice-of-law rules of the forum state."  Estate of Darulis v. Garate, 401 F.3d 1060, 1062 (9th Cir. 2005). California law thus determines the effect of the contractual choice-of-law provision.  Under California law, there is a "strong policy favoring enforcement of [choice-of-law] provisions." Nedlloyd Lines B.V. v. Sup. Ct., 3 Cal. 4th 459, 464-65 (1992).

To determine whether a choice-of-law provision is enforceable, California courts follow the <u>Restatement (Second) of Conflict of Laws</u> § 187, which provides that a choice-of-law provision will be enforced unless either,

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

<u>Restatement (Second) of Conflict of Laws</u> § 187(2).

"A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state." <u>ABF Capital Corp. v. Osley</u>, 414 F.3d 1061, 1065 (9th Cir. 2005) (citing <u>Nedlloyd</u>, 3 Cal. 4th at 467).  This prong is satisfied where one party had its principal place of business in the chosen state.  See <u>PAE Gov't Servs. v. MPRI, Inc.</u>, 514 F.3d 856, 860 (9th Cir. 2007).  Because Defendant's principal place of business is in Colorado, this requirement is met.

The parties dispute whether application of Colorado law is contrary to a fundamental policy of California.  Regardless, the Court concludes that California does not have a materially greater interest in the outcome of this case than Colorado.  To determine whether California has a materially greater interest than Colorado, the court "must analyze the following factors: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and, (5) the domicile, residence,

nationality, place of incorporation, and place of business of the parties." Ruiz v. Affinity Logistics Corp., 667 F.3d 1318, 1324 (9th Cir. 2012) (citations omitted). These factors favor both states equally. Based on the evidence before the Court, both states were the places of contracting and negotiation of the contract; Plaintiff, located in California, communicated with Defendant, located in Colorado, by telephone, email and mail to accomplish these tasks. The employment contract was performed in both California and Colorado. During his employment, Plaintiff lived in California, tele-commuted with colleagues who were located in Colorado, and periodically traveled to Colorado to carry out business. Defendant carried out its side of the contract primarily from Colorado, from which it paid and supervised Plaintiff. Defendant's primary place of business is in Colorado, and Plaintiff resides in California.

Because California does not have a greater interest in the outcome of this case, the Court finds that the choice of law provision is enforceable. Accordingly, Colorado law applies.

### 2. Scope of Agreement

The parties dispute whether the dispute falls within the scope of the parties' agreement to arbitrate. The Court notes that there are two different arbitration clauses in the parties' contracts. The first clause, upon which Defendant primarily relies, appears in the Employment, Confidential Information and Invention Assignment Agreement. Defendant argues that, because this clause appears in an "employment agreement" that Plaintiff signed in conjunction with the offer letter, it requires that all disputes related to the terms and conditions of employment be

submitted to arbitration.  Plaintiff argues that the agreement

primarily addresses confidentiality and that the clause applies at

most to claims that relate to at-will employment.

The language of the first clause, by its terms, does not

encompass every employment-related dispute that may arise between

the parties; it is limited to those "arising out of or relating to

any interpretation, construction, performance or breach" of the

Employment, Confidential Information and Invention Assignment

Agreement.  "The use of 'arising out of' and 'relating to'" in

that agreement "establishes that the arbitration clause is broadly

construed."  Oracle Am., Inc. v. Myriad Group AG, 2011 WL 3862027,

at *6 (N.D. Cal.) (quoting Cape Flattery Ltd. v. Titan Maritime,

LLC, 647 F.3d 914, 922 (9th Cir. 2011) ("when parties intend to

include a broad arbitration provision, they provide for

arbitration 'arising out of or relating to' the agreement.")); see

also P & P Indus., Inc. v. Sutter Corp., 179 F.3d 861, 871 (10th

Cir. 1999) (finding that an arbitration clause stating that "any

controversy, claim, or breach arising out of or relating to this

Agreement" was "a broad arbitration clause").  Courts have

explained that "such language 'reaches every dispute between the

parties having a significant relationship to the contract and all

disputes having their origin or genesis in the contract.'"

Oracle, 2011 WL 3862027, at *6 (quoting Simula, Inc. v. Autoliv,

Inc., 175 F.3d 716, 721 (9th Cir. 1999)); see also P & P, 179 F.3d

at 871 (holding that "all claims with a significant relationship

to the Agreement, regardless of the label attached to them, arise

out of and are related to the Agreement") (internal quotation

marks and formatting omitted).  Thus, "[t]o require arbitration,

United States District Court
For the Northern District of California

[plaintiff]'s factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." Id. (quoting Simula, 175 F.3d at 721).

Here, the allegations underlying some, but not all, of Plaintiff's claims "touch matters" related to this contract. First, the breach of contract and breach of covenant of good faith and fair dealing claims contain allegations that directly relate to Plaintiff's status as an at-will employee. See 1AC ¶¶ 39-41, 48. Accordingly, the Court finds that these claims fall within the terms of the arbitration agreement.

Defendant contends that the arbitration agreement extends to Plaintiff's claims for discrimination under FEHA and wrongful termination in violation of public policy, because it "will necessarily point to [the Employment, Confidential Information and Invention Assignment Agreement] to establish Plaintiff's at-will status and explain that it had the absolute right to terminate Plaintiff at-will, and that such a termination does not constitute age discrimination . . ." Reply at 11. Plaintiff responds that at-will employment is not a defense to claims for wrongful termination in violation of public policy or state law discrimination claims. Historically, pursuant to the at-will employment doctrine under Colorado law, "either the employer or the employee was free to terminate the employment at any time for no cause whatever and without notice." Martin Marietta Corp. v. Lorenz, 823 P.2d 100, 106 (Colo. 1992). In Martin Marietta, the Colorado Supreme Court recognized a public policy exception to this doctrine. Id. at 108-10. Under the public policy exception,

21

United States District Court
For the Northern District of California

an employee may bring a claim for wrongful termination if the discharge was based on a refusal to engage in conduct that would violate public policy, or participation in conduct that is protected or encouraged by public policy.  Coors Brewing Co. v. Floyd, 978 P.2d 663, 666-67 (Colo. 1999) (en banc).  In several cases after Martin Marietta, Colorado federal district court cases refused to extend the doctrine to encompass claims invoking public policy against certain types of discrimination and retaliation, because an existing statute already provided a remedy for the wrongful termination.  See Basile v. Missionary Sisters of the Sacred Heart of Jesus-Stella Maris Province, 2011 U.S. Dist. LEXIS 137694, at *5-6 (D. Colo.) (wrongful termination claim based on age discrimination barred because already protected by the Age Discrimination in Employment Act); Hein v. AT&T Operations, Inc., 2010 U.S. Dist. LEXIS 133809, at *17-18 (D. Colo.) (wrongful termination claim based on retaliation barred because already protected by the Sarbanes-Oxley Act of 2002); Gorkin v. Vinnell Corp., 2006 U.S. Dist. LEXIS 18836, at *15 (D. Colo.) (wrongful termination claim based on national origin discrimination barred because remedy available under Title VII); Endahl v. Vinnell Corp., 2006 U.S. Dist. LEXIS 1617, at *28-29 (D. Colo.) (wrongful termination claim based on age and national origin discrimination barred because the Colorado Anti-Discrimination Act provides a remedy; the fact that the plaintiff there had not asserted claims under that statute "is irrelevant").  However, although at-will employment status is generally not a defense for FEHA claims, the at-will employment term relates to central issues for this claim. Accordingly, the Court concludes that Plaintiff's claims for

wrongful termination and violation of FEHA relate to or arise out of his at-will employment status and that arbitration of these claims is required.

Further, to the extent that Plaintiff's UCL claim is based on his claims for breach of contract, breach of covenant of good faith and fair dealing, wrongful termination and violation of FEHA, it also relates to his status as an at-will employee. See 1AC ¶¶ 50-67 (incorporating other claims).

Finally, Plaintiff's claim for refusal to permit inspection and copying of personnel and payroll documents does not arise out of or relate to the at-will employment clause in the Employment, Confidential Information and Invention Assignment Agreement. Accordingly, the Court finds that this claim does not fall within the scope of the first arbitration clause.  Further, to the extent Plaintiff's UCL claim is premised on this claim, the UCL claim also does not fall within the scope of this arbitration clause.

The second arbitration clause, to which Defendant only briefly referred in its motion to compel arbitration, see Mot. to Compel Arb. at 10:20-21, uses more limited language.  That clause, which appears in the 2009 Bonus Plan, applies by its terms to disputes brought "under this Plan" only.  Schlisner Reply Decl. ¶ 7, Ex. A, at 5.  Courts have held that arbitration clauses that use the language "arising under" should be interpreted narrowly. Cape Flattery, 647 F.3d at 921.  See also Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983) ("'arising hereunder' is intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself").

United States District Court
For the Northern District of California

Plaintiff does not allege a breach of the terms and conditions set forth in the 2009 Bonus Plan.  Accordingly, the Court finds that the arbitration clause in the 2009 Bonus Plan does not require arbitration of these claims.

       3. Validity of Agreement

     "In determining the validity of an agreement to arbitrate, federal courts should apply ordinary state-law principles that govern the formation of contracts." Coneff v. AT & T Corp., 673 F.3d 1155, 2012 WL 887598, at *5 (9th Cir. 2012) (quoting Ferguson v. Countrywide Credit Indus., 298 F.3d 778, 782 (9th Cir. 2002)). Accordingly, the Court applies Colorado contract law.

     Defendant argues that the agreement is valid under Colorado law.  Plaintiff responds that it is invalid under California law and does not address Colorado law directly.

     Colorado courts consider several factors in evaluating the unconscionability of an agreement to arbitrate, including:

> (1) the use of a standardized agreement executed by parties of unequal bargaining power;
>
> (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it;
>
> (3) the use of fine print in the portion of the contract containing the provision in question;
>
> (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated;
>
> (5) the terms of the contract, including substantive fairness;
>
> (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and
>
> (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect.

United States District Court
For the Northern District of California

Bernal v. Burnett, 793 F. Supp. 2d 1280, 1286 (D. Colo. 2011) (citing Davis v. M.L.G. Corp., 712 P. 2d 985, 991 (Colo. 1986)).

There are some factors here that weigh in favor of a finding of unconscionability.  Although Plaintiff may have been able to find a job elsewhere, Defendant held the majority of the power in this situation.  Plaintiff has submitted a declaration stating that he was told by his managers and human resource representatives that the terms in the contracts were non-negotiable, and that he did not understand the Employment, Confidential Information and Invention Assignment Agreement to apply to anything other than confidentiality and intellectual property matters.

Plaintiff also argues that the adhesive nature of the contract weighs strongly in favor of a finding of unconscionability.  However, after Concepcion, district courts in Colorado applying Colorado law have found that they have "no alternative but to discount the weight to be attributed to the adhesive nature of the Arbitration Agreements at issue here." Bernal v. Burnett, 793 F. Supp. 2d 1280, 1287 (D. Colo. 2011). See also Daugherty v. Encana Oil & Gas (USA), Inc., 2011 WL 2791338, at *9 (D. Colo.).

Plaintiff also argues that the lack of mutuality "renders an arbitration agreement presumptively, if no [sic] per se, unconscionable."  Opp. to Mot. to Compel Arbitration, 10. However, under Colorado law, "'every contractual obligation need not be mutual as long as each party has provided some consideration to the contract.'"  Vernon v. Qwest Communications Int'l, Inc., 2012 WL 768125, at *16 (D. Colo.) (quoting Rains v.

Foundation Health Systems Life & Health, 23 P.3d 1249, 1255 (Colo. App. 2001)).  Thus, an arbitration provision is not rendered unfair "simply because it does not require defendant to arbitrate."  Id. at *16 (quoting Rains, 23 P.3d at 1255.  Here, there is no dispute that Defendant provided at least some consideration for the employment contracts.  Accordingly, the lack of mutuality in the arbitration clause itself does not render the entire contract unconscionable under Colorado law.

Plaintiff also argues that the requirements that he share half the costs of arbitration and travel to Colorado for it are unconscionable.  In Daugherty, a Colorado district court considered a similar cost-sharing provision.  The court stated that "where the terms of an arbitration agreement prevent an individual from vindicating his or her statutory rights, the arbitration agreement is unenforceable," and concluded that, because the plaintiffs in that case had submitted affidavits attesting that they were unable to pay costs associated with arbitration and would have to abandon their claims if forced to share costs, the cost-sharing provision was unenforceable and severable.  Daugherty, 2011 WL 2791338, at *10-13 (citing Shankle v. B-G Maint. Mgmt. of Colorado, Inc., 163 F.3d 1230, 1234 (10th Cir. 1999)).  See also Fuller v. Pep Boys--Manny, Moe & Jack of Delaware, Inc., 88 F. Supp. 2d 1158, 1160-62 (D. Colo. 2000) (same).  Here, however, while Plaintiff argues that that these terms are unconscionable because of the additional financial burden that they would place on him, he does not argue that he could not pay these costs or that these terms would effectively preclude him from engaging in arbitration.

The agreement to arbitrate was clearly written in the Employment, Confidential Information and Invention Assignment Agreement. There is no evidence that Plaintiff was subject to significant external pressure driving him to sign the documents without taking time to review them or have someone else review them; the evidence suggests that Plaintiff had the agreements for several days before returning them. Based on an overall consideration of the relevant factors, the Court finds the arbitration agreement enforceable as to the covered claims.

III. Motion to Dismiss based on Improper Venue

Defendant also moves to dismiss the case in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(3) based on improper venue. Plaintiff responds that there is no valid or enforceable forum selection clause.

As Plaintiff points out, neither the offer letter nor the 2009 Bonus Plan contains a forum selection clause. Although the 2007 Bonus Plan does contain a forum selection clause, it is limited to suits "under or relating to this plan," and this suit is not. Further, the 2007 plan was superseded by the 2009 Bonus Plan, which omits such a clause.

The Employment, Confidential Information and Invention Assignment Agreement does contain a forum selection clause. However, this clause requires only that arbitration take place in Colorado and does not mandate that actions brought in state or federal court must be brought in Colorado. Thus, to the extent that claims survive in federal court, the Court DENIES Defendant's motion to dismiss them on this ground.

United States District Court
For the Northern District of California

However, to the extent that the Court grants Defendant's motion to compel arbitration of certain claims, the Court also finds that, pursuant to this clause, such arbitration must take place in Colorado.  Although Plaintiff argues that this provision is unconscionable and unenforceable, the Court has rejected this argument as discussed above.  Accordingly, the Court enforces the venue provision in compelling arbitration of Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, violation of FEHA, wrongful termination and violation of the UCL.

CONCLUSION

For the reasons set forth above, the Court GRANTS in part Defendant's motion to compel arbitration or dismiss and DENIES it in part (Docket No. 13).  The Court grants Defendant's motion to compel arbitration of Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, violation of FEHA, wrongful termination and violation of the UCL to the extent it is based on these claims.  The Court denies Defendant's motion to compel arbitration of Plaintiff's claim for refusal to permit inspection and copying of personnel and payroll documents and violation of the UCL based on that claim.

The Court also DENIES Plaintiff's motion to remand (Docket No. 12).  Within seven days of the date of this Order, Defendant may file an amended notice of removal specifically alleging that Plaintiff is a citizen of California.  Plaintiff may renew its motion to remand only on this ground within two weeks thereafter, if Plaintiff can argue in good faith that Defendant has failed to file an amended notice of removal or has failed to allege his

citizenship properly in its amended notice of removal.  Plaintiff may also include in his motion any argument that the amount-in-controversy requirement is not met by the claims that remain in this action.

Plaintiff has filed a request for a case management conference (Docket No. 42).  Accordingly, a case management conference on the claims that remain pending before this Court is set for Wednesday, November 7, 2012 at 2:00 p.m.

IT IS SO ORDERED.

Dated: 9/26/2012

CLAUDIA WILKEN
United States District Judge